UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND-DIVISION

BRIAN A. JEREMIAH,                         Civil Case No. 2:21-cv-00618 MK

                    Plaintiff,             PRISONER CIVIL RIGHTS
                                           COMPLAINT

  v.

BRAD CAIN Superintendent SRCI,                  42 U.S.C. § 1983

JAMES TAYLOR SRCI Grievance Coordinator,

JERRY TIMBLIN (Retired Food Manager) SRCI, J. MILLER(SRCI),

COLLETTE PETERS Director of O.D.O.C., OFFICER JANTZEN SRCI,

Lt. ROWLEY SRCI, CAPTN. KILE SRCI, SGT. REAL SRCI,

OFFICER HARRIS SRCI, P. HALLETT (Assistant Food manager) SRCI,

OFFICER HAWKINS SRCI, SGT. KAUTZ SRCI, LT. ANDERSON SRCI,

CAPTN. JOST SRCI, CAPTN. WOODLAND SRCI, OFFICER N. MAIN SRCI,

LT. KING  SRCI, OFFICER RAINWATER SRCI, OFFICER STONEMAN SRCI,

J. GILMORE(SRCI), 2 SRCI Officers working DSU-A 2nd shift on 09-27-18,

Officer who escorted plaintiff to DSU with Sgt. Real and Officer Harris on 09-25-18 SRCI,

ODOC staff member responsible for keeping facilities up to code,

SRCI Complex 3 management from 5-15-18 to 07-09-18,

SRCI Unit 3G officers from 05-15-18 to 07-09-18,

SRCI Staff responsible for kitchen and food service areas and workers in 2018,

SRCI Officers on duty in DSU on 02-21-19,

SRCI Sgt. On duty 3rd shift on 04-04-19 complex 2,

SRCI Lt. On duty 2nd  shift on 04-05-19 complex 2,

TRCI and Salem staff responsible for COVID handling, Doe Defendants,

Defendant(s) in their official and individual capacities,

A. Have you brought any other action or appeal in a court of the United States while a prisoner?

☒Yes (2:16-cv-00532TC (in appeals now), 2:17-cv-01612MC)

## I.

A. Place of confinement: ___Two Rivers Correctional Institute___

B. Is there a prisoner grievance procedure in this institution?

☒ Yes                    ☐ No

C. Have you filled a grievance concerning the facts relating to this complaint?

☒ Yes                    ☐No

D. Is the grievance process completed?

☒ Yes                    ☐ No

## II. PARTIES

A.      Name of Plaintiff: Brian A. Jeremiah

Security Identification No: 11464377

Address: 82911 Beach Access road Umatilla, Oregon 97882

B. Defendants,**Brad Cain Superintendent SRCI,** James Taylor SRCI Grievance Coordinator**, Jerry Timblin (retired Food Manager) SRCI,** Collette Peters Director Of O.D.O.C., **Officer Jantzen SRCI,** Lt. Rowley SRCI, **Captn. Kile SRCI,** Sgt. Real SRCI, **Officer Harris SRCI,** P. Hallett (assistant Food Manager) SRCI, **Officer Hawkins SRCI,** Sgt. Kautz SRCI, **Lt. Anderson SRCI,** Captn. Jost SRCI, **Captn. Woodland SRCI,** Officer N. Main SRCI, **Lt. King  SRCI,** Officer Rainwater SRCI, **Officer Stoneman SRCI,** Officer Who Escorted Plaintiff To Dsu With Sgt. Real And Officer Harris On 09-25-18 SRCI, **2 SRCI Officers Working Dsu-A 2ⁿᵈ Shift On 09-27-18,** Odoc Staff Member Responsible For Keeping Facilities Up To Code, **SRCI Complex 3 Management From 5-15-18 To 07-09-18,** SRCI Unit 3g Officers From 05-15-18 To 07-09-18, **SRCI Staff Responsible For Kitchen And Food Service Areas And Workers In 2018,** SRCI Officers On Duty In Dsu On 02-21-19, **SRCI Sgt. On**

**Duty 3rd Shift On 04-04-19 Complex 2,** SRCI Lt. On duty 2nd shift on 04-05-19 complex 2.

## II. EXHAUSTION DISCUSSION

On April 23rd 2021 I filed my initial complaint and it was dismissed due to statute of limitations. However, that statutory time is tolled during exhaustion of remedies (see **Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005)), (*Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) ("This circuit has, with other circuits, adopted a mandatory tolling provision for claims subject to the Prison Litigation Reform Act."); *see also* Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005).)** Exhaustion of remedies, in the case of the issues brought up in this suit, involve the following process:

1. File initial grievance
2. First appeal to grievance.
3. Second appeal to grievance.
4. Tort Claim Notice

The filing of local remedies is only required of an inmate if they are effectively available to him, as determined by the Supreme Court in **Ross v. Blake** and others. This is a discussion in **Remington v. Myrick (D. Or. 2017)** wherein it points out **Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1859, 1860 (2016)** and says, **"***Construing the word "available" as used in the PLRA, the Supreme Court has explained that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). An inmate may show that an administrative remedy, "although officially on the books," is not available if (1) "it operates as a simple dead end," with officers "unable or consistently unwilling to provide relief"; or (2) the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) the prison administrators, through "machination, misrepresentation, or intimidation," "thwart inmates from taking advantage of a grievance process." Id. at 1859-60.*

I will discuss each disputed exhaustion requirement by claim number.

1. **Claim I:**
   a) 6-15-18: Initial grievance filed (On a Spanish form, the only one in stock on the unit at the time)
   b) 6-19-18: Init. Griev. Returned for correction because James Taylor (Grievance coordinator) did not want to process a DOC provided Spanish grievance form.
   c) 06-22-18: Init. Griev. Sent back in with kyte explaining that forms were out and that the form filed was provided by the unit officer.
   d) 06-26-18: Init. Griev. denied again.
   e) 06-29-18: Init. Griev. Sent again, with another kyte.
   f) 07-03-18: Init. Griev. denied again.
   g) 07-09-18: Rewrote grievance on the now available English form.
   h) 07-18-18: Init. Griev. denied to process because I was over the 14 days to correct a grievance
   i) 07-18-18: Init. Griev. Accepted (not sure how it was on the same day as being refused)

**j)** 07-24-18: Init. Griev. Response to grievance sent.
**k)** 07-25-18: 1st Appeal sent.
**l)** 07-27-18: 1st Appeal accepted
**m)** 08-13-18: 1st Appeal Brad Cain response sent
**n)** 08-20-18: 2nd Appeal sent
**o)** 08-22-18: 2nd Appeal denied because James Taylor said I added to grievance by directly addressing the argument on the Init. Griev. Response.
**p)** 08-23-18: 2nd Appeal resent with kyte
**q)** 08-28-18: 2nd Appeal denied again
**r)** 08-28-18: 2nd Appeal resent with yet another kyte
**s)** 08-30-18: 2nd Appeal denied again
**t)** 09-14-18: Tort Claim notice sent
**u)** 11-14-18: Tort Claim response from Salem
**v)** The dispute with the 2nd appeal was that I was adding to the grievance and you can't do that. But in fact I was simply responding to the response to the initial grievance and 1st appeal.
**w)** In the initial grievance response SRCI staff stated that the temps in each unit are monitored. I contested that the temps are not monitored or they would have seen to extremely low temps for months at a time. This they said was adding to my initial grievance which mentioned nothing about temperature monitoring devices. It is obvious I was responding to their assertion that they are monitored. They ultimately refused to process the grievance, making the process complete on 11-14-2018 when the tort claim notice was settled.

2. **Claim II:**
   **a)** 09-26-18: Initial Grievance filed
   **a)** 10-05-18: Initial Grievance accepted
   **b)** 10-11-18: Initial Grievance response sent
   **c)** 10-18-18: First Appeal sent
   **d)** 10-25-18: First Appeal accepted
   **e)** 11-21-18: First Appeal response sent
   **f)** 12-01-18: Second Appeal sent
   **g)** 12-04-18: Second Appeal refused
   **h)** 12-05-18: Second Appeal sent again with Kyte
   **i)** 12-07-18: Second Appeal refused again
   **j)** 12-11-18: Second Appeal sent again with another kyte
   **k)** 12-12-18: Second Appeal refused again
   **l)** 01-07-19: Tort Claim Notice sent
   **m)** 10-09-19: Tort Claim Notice Response sent from Salem

The dispute on this second appeal was that James Taylor was asserting I had already filed a tort claim notice on the issue involved. Each person being grieved needs to be on a different grievance because they count each persons involvement as a separate issue. Cptn. Kyle participated in the retaliation and so I filed a grievance on him, which was refused and never allowed to be processed. I sent a Tort claim notice on his participation in signing the order to put me in DSU out of retaliation for saying I was going to file a grievance and lawsuit. The issue above was regarding Lt. Rowley writing me up the document Cptn. Kyle signed. I had not sent a tort claim notice on Lt. Rowley's participation. Since each person is grieved

separately as it's own issue, I had not filed anything further on the person involved in this grievance.

3. **Claim III:**
   a) 09-30-18: Initial Grievance sent
   b) 10-02-18: Initial Grievance Accepted
   c) 10-16-18: Initial Grievance Response sent
   d) 10-18-18: 1st Appeal Sent
   e) 10-25-18: 1st Appeal Accepted
   f) 11-21-18: 1st Appeal Response sent
   g) 12-01-18: 2nd Appeal Sent
   h) 12-04-18: 2nd Appeal Accepted
   i) 12-13-18: 2nd Appeal Response
   j) 01-07-19: Tort Claim Notice sent
   k) ----------: Never responded, they do not put any sort of reference information when sending a tort claim notice response (even though I asked for it). I sent several tort claim notices on 01-07-19 and I asked for them to give me an indication as to which one they were responding to, more than just the standard reference number they assign to each notice. They did not do so, so I have no idea if they responded, or when. I have a handful of tort claim notice responses that I do not have anyway of assigning to a sent tort claim notice. But either way they take months to respond, often 8+ months.

4. **Claim IV:**
   a) Filed initial grievance naming both parties involved, had to rewrite with one person named on each independent grievance. It took some time to work past the confusion, but it all got accepted.
   b) 10-18-18: 1st Appeal sent
   c) 10-25-18: 1st Appeal Accepted
   d) 11-21-18: 1st Appeal Response sent
   e) 12-01-18: 2nd Appeal sent
   f) 12-04-18: 2nd Appeal Accepted
   g) 12-13-18: 2nd Appeal Response sent
   h) 01-07-19: Tort Claim notice sent
   i) ----------: never responded (see note on claim 3 above where they didn't respond there either)

5. **Claim V:** This issue had grievances completed in mid-2018, but it was an ongoing violation until early May 2019 when I was transferred to TRCI. The date should be run from the last time of violation. Since my suit was filed in April 2021 and the last violation occurred in May of 2019, I am within my time limit.

6. **Claim VI:** This claim's grievances were denied and I have copies of multiple attempts at trying to process the grievance. This also was an ongoing violation until May 2019 when I was transferred to TRCI.

7. **Claim IIV:** Same as claim 5, above.

8. **Claim IIIV:**

a) 01-12-19: Initial grievance sent.
b) 01-17-19: Initial grievance accepted.
c)    ?    : Initial grievance response.
d) 02-05-19: 1st appeal sent.
e)    ?    : 1st appeal accepted.
f) 02-28-19: 1st appeal response.
g)    ?    : Docs taken during abuse in DSU. On Feb 7th I was framed by Officer Jantzen from SRCI in retaliation for filing lawsuits and grievances. During the height of the abuse, where my life was threatened and a lot of horrible things happened in DSU by the hands of multiple officers, I was able to get a letter out to this court (I say "able to" because they had been throwing my mail away, but I snuck it out when the abusive guards were off duty) explaining the abuse and the fact that they tore up and stole many legal documents and threatened to hurt me really bad if I kept complaining (See case 2:17-cv-01612MK doc. 97, I believe). I was unable to finish the process because they stole the papers and threatened me with bodily harm if I complained again.
h) June 2019: Sent Tort claim notice
i) Still no response

9. **Claim IX:** 02-09-19: Grievance filed.
   a) No response, this was in the middle of the abuse in DSU and my mail was stolen and thrown away by guards.
   b) 05-01-19: Toward the end of the abuse in DSU, as it was dying down, I got a kyte out to Grievance Coordinator asking about the grievance and it's status.
   c) 05-20-19: Response to kyte saying no response to grievance will be sent. I have this kyte in my possession. Thus the grievance process was complete.
   d) 06-27-19: Tort Claim Notice sent. This is within the 2 year statute.
   e) 07-08-19: Tort Claim Notice responded to.

10. **Claim X:** This claim was during the abuse while I was in DSU for 90 days. I was intimidated and threatened out of not only filing grievances, but making my lawful phone call to the inspector general. That being said, I could not file a grievance. This was also detailed in the letter I sent to this court during the abusive 90days (See case 2:17-cv-01612MK doc. 97, I believe).

11. **Claim XI:** Same as Claim X.

12. **Claim XII:**
    a) 04-13-19: Initial Grievance sent.
    b) 04-18-19: Initial Grievance accepted.
    c) 05-02-19: Initial Grievance response.
    d) 05-05-19: 1st Appeal sent.
    e) 05-13-19: 1st Appeal accepted.
    f) 07-16-19: 1st Appeal response.
    g) 07-17-19: 2nd Appeal sent.
    h) 08-09-19: 2nd Appeal accepted.
    i) 08-27-19: 2nd Appeal response.
    j) 09- ? -19: Tort Claim Notice sent.
    k) No response.

**13. Claim XIII:**
   **a)** 06-19-20: Initial Grievance sent.
   **b)** 07-10-20: Initial Grievance denied.
   **c)** Tort Claim Notice sent, not sure when though.

Some of these claims appear to be time-barred, as was brought up by Judge Kasubhai, if the timeline is not tolled during exhaustion. After seeing the above timelines and taking into consideration the tolling of the statute during exhaustion, most of the claims are within the time range. There are 4 matters of law within the discretion of the court regarding the remaining claims where the tolling does not get us to the 24 month limit (Clams 1-4 and 5-7).

1. **First:** COVID caused multiple month+ lock-downs where the law library was closed and inaccessible to me to do research. I sent many kytes trying to get access to even the computer on the unit that had some law library stuff on it and was denied. The units I was on during 2020 when the majority of the lock-downs occurred (Unit 13 and 8 and 11(I think))were locked-down at least 3 months, perhaps as much as 4 months, where we could not leave the unit. Even as late as January of 2021 the law Library was shut down for multiple weeks due to the coordinator having COVID. I have no way of getting exact dates and durations of each lock-down, but the total time in my case was probably closer to 4 months total. The law library being inaccessible should also toll the time statute. If this time was 4 months, then it takes care of all but claim 1, as the Tort Claim Notices were sent on 01-07-19 and the case was filed on 04-23-21, 3 1/2 months later.(Claims 1-4)
2. **Second:** I assert that the spirit of the statute does allow for a plaintiff to wait for a response to his Tort Claim Notice in hopes that a resolution can be had before filing? The timeline should be tolled until their response. It is always better to get things dealt with without bothering the court and waiting for a response to try to resolve the issue should be construed as being within the tolling periods.(claims 1-4)
3. **Third:** Threats of assault and death, by staff who had just planted a knife in my cell to try to get me more time added to my sentence, if I complained should, and does, make filing grievances unsafe and therefore exhausted.(claims 10-11)
4. **Fourth:** Ongoing violations. Ongoing violations should be construed as being last violated on the day I was last subject to the violation. Having left SRCI in early May 2019, I am within my timeline on claims 5-7.

## III. STATEMENT OF CLAIMS

# Claim I

My 8th Amendment right to reasonable conditions of confinement have been violated by Brad Cain (Superintendent) who is directly in charge of facilities maintenance and inmate safety, James Taylor, Management who worked complex 3 from about 05-15-18 to 07-09-18 at SRCI, Officers who worked unit 3G from 05-15-18 to 07-09-18.

**Supporting Facts:**

1.    Starting sometime in April of 2018 the air conditioning for unit 3G got stuck on full blast and it was excruciatingly cold in unit 3G. Every officer who worked on the unit had to bring scarfs, coats and caps to keep from freezing. Some even plugged up the AC vents or redirected the air that pointed at their desk. Everyone complained, even the officers. I complained to a lieutenant and he told me it was indeed "like a meat locker in there", but that the AC was either on or off, there was no adjustment—which of course is not true. He refused to fix it. I finally wrote a grievance on June 15th 2018, trying to alert the grievance coordinator about the issue so he could fix it. Instead of addressing the issue he denied my grievance because my unit officer had only Spanish grievance forms available, so I had to file it in English on a Spanish form.

2.    06-22-18 I sent a kyte to James Taylor (Grievance Coordinator) explaining that the form was all that was available and it is a perfectly legitimate form. I asked him to, instead of worrying about the form, just get the AC turned down so it is physically bearable. I also re-submitted the legitimate grievance form with the kyte.

3.    06-29-18 I got a response back from Taylor who denied my grievance again because it was Spanish. He wrote no response to my kyte and refused to simply call maintenance and ask them to fix the AC. I then sent another kyte to ask him to simply fix the problem... no response.

4.    07-09-18 I wrote out another grievance with an English form we now had. I explained that it was so cold I could barely sleep and that I had to pile my coat and all my extra clothes on top of me to help fight the bone chilling cold. I had a sore throat and almost no sleep for weeks because of the cold. The grievance was denied again, and again no help was given.

5.    07-12-18 About this date another officer who did not normally work this unit came in for the day and he immediately said, " Why the F*** is it so cold in here?!" I replied, "They won't turn the AC down". He said he was not going to stay in here like this and he called a friend of his in maintenance to come fix it. It took about 10 minutes for him to arrive and about 1 minute to fix the problem. This could have been fixed in April if anyone had cared at all about inmates.

This entire episode could have easily been resolved if just one officer would have called maintenance back in April, or again in June when I kyted and sent a grievance to James Taylor. It was so cold in there it felt like I was living in the snow. My hands and feet hurt constantly—my head was foggy and I could hardly sleep. This is my second time having to file a lawsuit over conditions

of confinement related to heating/cooling in consecutive years (winter of 2016/2017 and then here in 2018). There is a pattern of indifference to the needs of inmates. In fact most of the claims in this entire suit could have easily been avoided completely with just basic, reasonable management practices.

It is clear that the constitution upholds a right to adequate temperature regulation in prisons:

> **(Saenz v. Reeves, 2012 U.S. Dist. LEXIS 131032, 2012 WL 4049975, at \*17 (E.D. Cal. Sept. 13, 2012)** *(concluding that it was clearly established that exposing an inmate to extreme cold for several months without providing adequate blankets and clothing would violate the prohibition against cruel and unusual punishment)*

I assert that Brad Cain is directly responsible for providing facilities that meet or exceed the current standard of humane treatment of human beings in custody. I am not naming him out of supervisory liability, but actual liability, because it is specifically his job to monitor and fix these sorts of issues. The facility poorly maintained to such a degree that it physically injured me for several months.

I name James Taylor because he is supposed to be in charge of getting grievance issues taken care of and instead of making a simple phone call to fix the issue, he declined to do anything, multiple times. Any of the officers or management working on Complex 3 during these dates could have and should have simply called maintenance to get this fixed—not doing so was them being deliberately indifferent toward a basic human right of inmates housed on unit 3G, myself included.

# Claim II

My 1st amendment right to freedom from retaliation for pursuing my right to redress for wrongdoings done to me by a state actor has been violated by Lt. Rowley(SRCI), Captain Kile (SRCI), Sgt. Real(SRCI), Officer Harris(SRCI, complex 3 on 09-25-2018), Officer Jantzen(SRCI, complex 3 on 09-25-2018),Officer Rainwater (SRCI), and one yet to be identified officer (SRCI, complex 3 on 09-25-2018).

**Supporting Facts:**

1.      09-25-2018 An issue arose over a period of time that caused me to write a letter to a LT.(whoever was working that night, it happened to be Rowley) stating that I was going to grieve and file a lawsuit if they kept punishing my unit when we've done nothing wrong. That is the short of the story, since the issue I wrote the note about is not in contention in this suit. After the note was delivered to that evenings LT.(Rowley), he sent a team to handcuff me and take me to the hole. On

the way he had me come to his office and he berated me for threatening and extorting them by saying I was going to file a grievance. He even wrote exactly that on the Misconduct Report. I advised him that I was allowed to say I was going to grieve and that he should consult with James Taylor, the grievance coordinator who manages some details of lawsuits. Rowley said he did not need to consult anyone and he put me in DSU. His sanction was clearly meant to stop me from grieving and filing lawsuits. It is illegal for him to sanction me for a protected activity. I spent 3 days in DSU and lost my housing and job (I was just hired as an orderly the day I was put in DSU). Regardless of the severity of the sanction, it is not legal to sanction for a protected activity, like filing a grievance. In Rowley's office were officers Rainwater, Jantzen (who later planted a knife in my room partly over this incident, see claim 9), Harris and one other who I can't recall at the moment and Sgt. Real. They all could have prevented me from being sanctioned, but instead participated. Captain Kile signed the Misconduct Report that was clearly illegal saying I was being sanctioned for saying I would file a grievance. Captain Kile should not have participated in that.

I assert that I have a right to grieve and to file lawsuits. That right was chilled when I was directly retaliated against for exercising that right. The above noted SRCI staff had no right to sanction me as they did for my protected action. The Misconduct Order will show clear intent. All the above officers participated in bringing me to DSU or approving/writing the misconduct report.

## Claim III

My 1st amendment right to freedom from retaliation for pursuing my right to redress for wrongdoings done to me by a state actor has been violated by  Sgt. Real(SRCI), Officer Harris(SRCI, complex 3 on 09-25-2018), and one yet to be identified officer (SRCI, complex 3 on 09-25-2018).
In Addition is a 14th Amendment violation for deprivation of my property directly related to this event.

### Supporting Facts:

1.    09-25-2018 Related to Claim 2 is this claim involving the 3 officers sent to my unit to handcuff me to bring me to DSU. When they said they were going to handcuff me I told them I had some important documents in my hand and asked permission to bring them back to my room. They told me they would take care of them. Which they did, by throwing them in the garbage. They were very mad that I had written a note saying I was going to file a grievance and a lawsuit. Because of

that they threw my documents away; which consisted of some grievance documents I was working on and some Federal case discovery documents (case #2:17-cv-01612MC) and some misc. docs. That is when they brought me into LT. Rowley's office and berated me for a while before bringing me to DSU.

2.      I was deprived of the above named documents, a hat, pencil sharper (expensive one) and several books. I tried hard to get them to replace the discovery and the rest of the items and they refused. I am asking to use pendent jurisdiction to pursue the deprivation due to the fact that the rest of the incident is being litigated here. It would be less burdensome to just put it all together in one suit.

I assert that the throwing away of my things was done out of retaliation for saying I was going to file a suit and a grievance. As is shown by them taking me to DSU minutes later for the same reason.


## Claim IV

My 1st amendment right to freedom from retaliation for pursuing my right to redress for wrongdoings done to me by a state actor has been violated by 2 officers assigned to DSU-A on 2nd shift(6:00am to 2:00pm) on 09-27-2018.

**Supporting Facts:**

1.      09-25-2018 I was brought to DSU-A31 as per incident in Claim 2

2.      09-26-2018 I wrote a grievance on food handling in DSU and turned it in in the mail that evening, saving a copy for myself.

3.      09-27-2018 About 8:30am I was escorted to the showers in DSU-A. When I returned to the cell, my copy of the grievance I had written was missing (Fact-of-note, this would be the first time my cell door was opened since I wrote the grievance). I had placed it on the bed prior to the shower and when I returned it was gone. The grievance was about the guys working that morning and how they handled food given to inmates the day before(no gloves, no hairnets, no heating or cooling of food, etc).

3.1.      About an hour later the officer who searched my cell and took my copy of the grievance during my shower walked by my cell with the food cart and refused to feed me lunch out of retaliation for writing a grievance against their food handling.

**3.2.**    That same day I wrote a grievance and attached a kyte requesting that video be preserved showing the officers' actions in taking my forms and his retaliation in not feeding me. I sent several such requests to preserve but they never responded. I have copies of each request.

I assert that the 2 officers were retaliating against me for filing a grievance regarding their food handling by refusing to feed me. Fortunately I was let out of DSU the next day or I may not have been fed for a while. I asked for a simple sack lunch and I would drop the entire matter, but for months they refused to simply give me a sack lunch. There is no excuse for them not taking care of these simple issues before they blow up. This did not need to come to suit.

## Claim V

My 8th Amendment right to be free from Cruel and Unusual Punishment was violated in the area of food preparation violations by: Brad Cain (Superintendent SRCI), Colette Peters(Director ODOC), Jerry Timblin(SRCI Food Manager, retired) and by the person whose job it specifically is to make sure facilities meet codes (O.A.R.'s and Health Codes, etc...).

**Supporting Facts:**

1. This suit is about non-compliance with code on the construction of the floors in food-service areas. This non-compliance caused real and present safety issues in regards to food-borne pathogens being spread throughout the entire kitchen and warewashing area. I was held, against my will, in conditions that were very unsafe and known to breed food-borne pathogens. Even after it was brought to their attention, nothing was done about it and I was forced to eat in unsafe conditions.

2. On 06-22-2018 I wrote a grievance explaining that OAR 291-061-0220 requires "all floors in food prep, service, eating and warewashing areas" to be "flat, with no grooves that can accumulate food-borne pathogens"(quoting from grievance). The floors are tile with deep groove slots that collect every kind of food served in the kitchen. These floors are sloppily mopped, but never actually cleaned. These floors are part of a larger problem with code compliance in all food-service areas at SRCI. The walls are out of code (for reasons similar to the floors), the warmers and coolers are out of compliance and are rarely if ever within the proper temp range, the restroom situation is completely out of compliance (see claim 6), they serve rotted food often, they use inmates with communicable diseases to serve food (see claim 7), the dishwashing system is well outside of code (exposed wires and unprotected,

scalding hot pipes right out in the open and many other equipment failures) and there are many other non-compliance issues related to electric and OSHA safety standards.

**Department of Corrections Chapter 291 Division 61**
**291-061-0220 Floors**
*(1)The floors of all rooms in which food or drink is stored, prepared, or served, or in which utensils are washed or stored shall be smooth, easily cleanable, and shall be kept clean and in good repair.*
*(2)Dustless methods of floor cleaning shall be used during hours of preparing or serving food.*

I reported the violating floors and explained the health concerns, they did nothing to address the problem. I assert that continuing to serve food in dangerous conditions, after being advised of code violations, especially related to food safety standards, is being deliberately indifferent to the safety and health of myself and all other inmates. I was subjected to this for 4 years. This violated my 8th amendment right to being held in a relatively safe environment if they are going to force me to be held against my will, because it put me in very real danger of E. Coli, Salmonella and other food-borne pathogens. Codes are there for a reason. If codes are superfluous and the state is going to argue that they are not *real* health concerns, then I am sure the restaurant industry would love to hear why they have been continually violated and shut down for the same violations. If it is dangerous for the general public, it is dangerous for the inmate population. I do not lose my rights to health and safety standards, especially in this area. The OAR mentioned above is specifically for prison kitchens. The same state who is ignoring the regulations, created the regulations. It is not necessary for damage to occur before a suit is filed (Farmer v. Brennan). The fact that they are deliberately indifferent to health concerns is enough. I am seeking financial remuneration for the brazen and deliberate ongoing violations and also to injunctive relief to have the violation fixed. If a person is held against their will by the state, the state must provide a measure of safety and security. Dangerous food-prep areas are not safe. I was placed in very real peril and they did not fix it.

# Claim VI

My 8th Amendment right to be free from Cruel and Unusual Punishment was violated in the area of food preparation violations by Brad Cain (Superintendent SRCI), Colette Peters(Director ODOC), Jerry Timblin(SRCI Food Manager, retired) and by the person whose job it specifically is to make sure facilities meet codes (O.A.R.'s and Health Codes, etc...).
**Supporting Facts:**

**1**    This suit is regarding a dangerous violation of code at SRCI in regards to toilets and lavatories in the kitchen and food prep areas. The OAR mandates that each correctional facility must have:

**291-061-0270 Toilet Facilities**

*(1) Every establishment shall be provided with toilet facilities for its food preparation or service workers. The toilet rooms shall be in or immediately adjacent to the food service or preparation area and shall provide fixtures for employees or workers in the following numbers:*

*(a) 1–9, minimum toilets 1, minimum lavatories 1;*

*(b) 10–24, minimum toilets 2\*, minimum lavatories 1;*

*(c) 25–49, minimum toilets 3\*, minimum lavatories 2;*

*(d) 50–74, minimum toilets 4\*, minimum lavatories 2;*

*(e) 75–100, minimum toilets 5\*, minimum lavatories 3;*

*\*Up to 2/3 of toilets may be urinals.*

*NOTE: In facilities constructed prior to July 1, 1986, toilet facilities located within 500 feet of the work area may be counted in this determination if such facilities are available without assistance to workers during all work periods.*

*(2)Where there are ten or more employees during any work shift, there must be separate restrooms provided and designated for each sex unless all employees on duty at any given time are of the same sex.*

SRCI has a single bathroom with a single toilet and between 25-49 people working at any time. This causes unsanitary conditions and long waits at the toilet.

**1.1**    On 06-22-2018 I wrote a grievance explaining that according to OAR 291-061-0270 "*service areas must have restrooms and toilets commensurate to the amount of employees working at any given time. Having worked there for about a month now, I see that we have 1 restroom and only 1 toilet—it should be 2 independent restrooms and 3 toilets according to the chart in the OAR*..." (direct quote from grievance)

**1.2**    The grievance was returned denied because they say I filed more than 2 grievances in a week, however the fact is they gathered grievances from 2 different weeks and counted them submitted on the same week. They were not submitted on the same week. The OAR says that no more than 2 grievances can be SUBMITTED in the same week. They take it as saying that no more than 2 grievances can be recorded or counted received in one

week. I wrote multiple kytes explaining this and they would not process my grievance. So exhaustion complete.

I assert that continuing to serve food in dangerous conditions, after being advised of code violations, especially related to food safety standards, is being deliberately indifferent to the safety and health of myself and all other inmates. I was subjected to this for 4 years. This violated my 8th amendment right to being held in a relatively safe environment, if they are going to force me to be held against my will; because being forced to eat in unsafe areas with food served in an unsafe fashion, put me in very real danger of E. Coli, Salmonella and other food-borne pathogens. Codes are there for a reason. If codes are superfluous and the state is going to argue that they are not *real* health concerns, then I am sure the restaurant industry would love to hear why they have been continually violated and shut down for the same violations. If it is dangerous for the general public, it is dangerous for the inmate population. I do not lose my rights to health and safety standards, especially in this area. The OAR mentioned above is specifically for prison kitchens. The same state who is ignoring the regulations, created the regulations. It is not necessary for damage to occur before a suit is filed (Farmer v. Brennan). The fact that they are deliberately indifferent to health concerns is enough. I am seeking financial remuneration for the brazen and deliberate ongoing violations and also to injunctive relief to have the violation fixed. If a person is held against their will by the state, the state must provide a measure of safety and security. Dangerous food-prep areas are not safe. I was placed in very real peril and they did not fix it.

## Claim VII

My 8th Amendment right to be free from Cruel and Unusual Punishment was violated in the area of food preparation violations by P. Hallett(Assistant Food manager SRCI), J. Gilmore(SRCI), J. Miller(SRCI), Brad Cain (Superintendent SRCI), Colette Peters(Director ODOC), Jerry Timblin(SRCI Food Manager, retired) and by the person whose job it specifically is to make sure facilities meet codes (O.A.R.'s and Health Codes, etc...).

**Supporting Facts:**

1. This claim is for further violations of health codes related to medical clearances for workers in all food prep, serving and ware-washing areas. The following OAR is what is in focus on this claim:

**291-061-0061  Medical Clearances**

*(1)The Health Services Section **will document** that an inmate is **free from communicable disease** that may be transmitted through the handling of food and is physically capable of performing the required work in the Food Services Section prior to assignment.*

*(2) Staff supervisors in each area of the Food Services Section shall:*

*(a) Inform all inmates who apply for a position in food services that **a current medical clearance is a requirement.**(bold mine)*

*(b) **Visually inspect all inmates** assigned to work units for signs or symptoms which could be a health hazard. Those inmates who exhibit symptoms of colds or flu, have cuts, abrasions, or skin rash will not be permitted to work until they have been seen and released for work by Heath Services. Inmates with cuts or abrasions that have been released by Health Services can work as long as they have the wound bandaged and they wear a plastic glove.(bold mine)*

SRCI does not do medical record clearance checks or inspections(nor does TRCI). They do not act in accordance with section 1 by failing to document that inmates are free from communicable diseases and furthermore they do not act in accordance with section 2(a) or (b) in informing potential hirees that a medical clearance is necessary to be hired, nor do they visually inspect each worker when they come on shift, as required in section 2(b).

I was hired there without my consent and without a medical check on me. They never asked my permission to release any medical records to whomever makes hiring decisions, which means they could not have looked at my medical records. Not once did I see a visual inspection of any inmate, nor was I inspected the entire time I was employed in the kitchen. Because they are failing and have continually failed for many years to check for communicable diseases on inmates hired in food service areas, they have put every inmate (and even staff who eat in the staff dining area), me included, into very real danger of catching a communicable disease, which are rampant in ODOC and prisons in general. As a single example: I was working on the food serving line in July of 2018 and an inmate was talking to the food service coordinator about his Hepatitis C treatment, while serving food. The staff member had no concern for the health of those to whom the food was being served.

They were being deliberately indifferent toward my safety which violates the eighth amendment. Many communicable diseases are irreversible and the law does not require that a person wait until he gets an irreversible disease before he gets relief. I am asking for injunctive relief in the form of requiring ODOC to follow the OAR above in all its'

facilities. I want ODOC to inform all potential hirees that they will be required to pass a medical exam and that each potential worker has the right to approve or disapprove the release of their medical records—letting them know they are not required to release any medical records but that they will not be hired without release of records. I am also looking for compensatory (if that is the correct term) and punitive damages for the years I was put at risk and the time since then that I am continuing to be at risk at TRCI (I have been moved from SRCI).

All of the above staff participated by being informed and refusing to take any action. To not correct this violation, once informed, is to be deliberately indifferent.

I assert that continuing to serve food in dangerous conditions, after being advised of code violations, especially related to food safety standards, is being deliberately indifferent to the safety and health of myself and all other inmates. I was subjected to this for 4 years. This violated my 8th amendment right to being held in a relatively safe environment, if they are going to force me to be held against my will; because being forced to eat in unsafe areas with food served in an unsafe fashion, put me in very real danger of E. Coli, Salmonella and other food-borne pathogens. Codes are there for a reason. If codes are superfluous and the state is going to argue that they are not *real* health concerns, then I am sure the restaurant industry would love to hear why they have been continually violated and shut down for the same violations. If it is dangerous for the general public, it is dangerous for the inmate population. I do not lose my rights to health and safety standards, especially in this area. The OAR mentioned above is specifically for prison kitchens. The same state who is ignoring the regulations, created the regulations. It is not necessary for damage to occur before a suit is filed (Farmer v. Brennan). The fact that they are deliberately indifferent to health concerns is enough. I am seeking financial remuneration for the brazen and deliberate ongoing violations and also to injunctive relief to have the violation fixed. If a person is held against their will by the state, the state must provide a measure of safety and security. Dangerous food-prep areas are not safe. I was placed in very real peril and they did not fix it.

### Claim VIII

My 1st amendment right to freedom from retaliation for pursuing my right to redress for wrongdoings done to me by a state actor has been violated by Sgt. Stoneman, Officer Jantzen and Officer Rainwater.

**Supporting Facts:**

1. On 1-12-2019 I was walking to chapel to a religious service and Sgt. Stoneman asked me why I was carrying a pen to chapel. He said pens could not be brought to the chapel. There were 3 officers present: Officers Jantzen(see claim 9), Harris and Sgt. Stoneman. Without arguing I took my pen back to my room and retrieved from my legal materials a copy of the new rule-book and the SRCI Newsletter from March of 2016 both of which stated pens are allowed to be brought to chapel. As I went back in the hallway to go to chapel I brought the rule-book and newsletter and asked permission to show them to the Sgt. I was granted permission and I approached an showed him both documents, each of which granted permission to bring writing utensils to chapel. This made all 3 officers there very mad that I was showing them rules and not just agreeing with whatever rule they decided to make up at the moment. Ofc. Jantzen even scowled very angrily and told me not to even look at him (which was a precursor to the events in claim 9). They were already mad at me because I had filed grievances and a tort claim notice on their Lieutenant (Rowley, see claim 2). Sgt. Stoneman informed me that the rule-book was no longer valid because it was 2 years old and that pens have never been allowed in chapel—regardless of the fact that it was the most recent rule-book and it clearly states that pens are allowed, as does the newsletter. I already have another lawsuit on this exact issue from another officer who retaliated against me for over a year because I fought him on this exact same thing. It seems to be their go-to of choice when picking on an inmate for retaliation purposes.

2. 01-13-2019 I was once again headed to chapel and they (Officers Jantzen and Rainwater) stopped me again about my pen. I had the rule-book, the newsletter (where all staff and inmates were alerted that inmates were allowed to take writing utensils to chapel) and a kyte from the chaplain saying the captain has approved pens to be take to chapel, all with me and I offered to show them the documents— they declined. Lt. Anderson and Captain (then LT. I believe) Garcia were there and they said nothing even though I was clearly being picked on out of retaliation.

3. Sometime in late January Lt. Rowley (from claim 2) brought me to his office and surrounded me with 5 officers (Jantzen, Harris, Rainwater, Stoneman and I don't recall the 5th) in an

attempt to intimidate me about this pen issue. I showed him the rule-book and the other documents and they did not care. I said I was going to file a lawsuit if they did not stop retaliating against me even though they knew pens were allowed. Officer Jantzen turned very red and clinched his teeth and asked "Is that a threat?!", "No, that doesn't constitute a threat." I replied. Lt. Rowley had to calm him down (because Rowley had already gotten in trouble for putting me in the hole for the same thing: see claim 2). This was another precursor to claim 9 where Jantzen planted a knife in my room to try to get me another felony and more time. The issue was not solved, even though I had the rule-book and kyte and newsletter on my side. Shortly thereafter claim 9 occurred.

This issue of retaliation would have continued if not for the fact that Officer Jantzen planted a knife in my room on Feb. 7th and a huge train of abuse proceeded. I assert that this entire episode is in retaliation for writing grievances and filing tort claim notices and lawsuits against staff at SRCI. There was no rule against bringing a pen and they stopped no one else for the same thing.

# Claim IX

My 1st amendment right to freedom from retaliation for pursuing my right to redress for wrongdoings done to me by a state actor has been violated by Officer Jantzen (SRCI).

**Supporting Facts**:

This claim has its' tendrils in several of the other claims as will be explained briefly below. I will start with the immediate concern for claim 9 here, then I will address the build-up for how and why this occurred.

1. 02-07-2019 I was removed from my chapel class and brought to DSU by Officers Rainwater and Harris (both involved in claim 8). I had no idea why I was being sanctioned. Later that night I found out that Officer Jantzen had planted a knife in my room and written me a misconduct report for it. He claims that at about 7pm they were doing a routine cell search and found a knife on my desk, under a stack of hardback books. First of all, they never do searches at 7pm. In 4 years of being at SRCI I have never seen a search done during that time

because of dayroom and other evening time issues going on. The officers who searched my room (Jantzen) were assigned to unit support and were out in the hall, not my unit. They had no reason to search my room except to plant a knife. The only time unit support comes to search rooms is when a mass search is going on. I bring this up not because they did not have a right to search my room, because they do have that right, but because it is highly unusual for someone not assigned to that unit to come in and search a single cell. The only reason they did it was to plant a knife. Officer Jantzen was the one who searched my room, the one who "found" the knife and the one who wrote the Misconduct Report.

1.1.    Over the next few weeks I was abused horribly in DSU; among other things I was chained naked to a wall and threatened that if I complain again they were going to hurt me very badly (Officer N. Main did that), they tore up my legal paperwork in front of me while chained to this wall, they didn't feed me at times, they made death threats and many many other things.

1.2.    During this time I was able to get a kyte out (I say able to get a kyte out because they were taking my mail and throwing it away) to the Superintendent (who never even responded because I was bringing him into my suits and for that reason he was party to the retaliation) and to Colette Peters office in Salem. Colette Peters contacted the Inspector General for me and he contacted the state police, who came in and did an investigation. I was run through a lie detector 5 times and passed every question (I failed my polygraph test in county even though I was telling the truth, so I'm not sure how those things work...), I had fingerprints and DNA tested and they saw that I had never touched that knife. The knife was supposedly hidden in plain sight on my desk, under a pile of hardback books. Who hides a knife under books that lay perfectly flat? The books would be incredibly askew and would hide nothing. In fact the knife would be more obvious under the books than elsewhere because the books would be in a very awkward position. A knife like that could get me a federal weapons charge and more time in prison, why would I hide it on top of my desk? I am non-violent and I preach peace from the pulpit—I don't have any violence in me. I have been attacked 3 times and I do not fight back to harm others. I have no reason to have a knife—and an elaborately made one at that.

Jantzen only did it because he was upset about the incident in Claim 2 where I was suing his friend, Lt. Rowley and 2 other incidents in claim 8 sections 1 and 3.

Planting a knife out of retaliation for grieving and filing suits is clearly a violation of the first amendment. I grieved the incident but James Taylor (Grievance Coordinator) refused to even respond to it. My copy of the grievance was one of a slew of papers that the DSU staff took from me while I was spending 90 days in DSU being abused. Officer Jantzen planted the knife and I also believe the Superintendent was involved because I kept sending him kytes about the abuse of his employees during various events prior to this situation and telling him I was going to involve him in the suits if he did not stop them from picking on me—that made him mad and I believe he approved this being done. I sent several kytes asking him to preserve video pertaining to the abuse in DSU and I never got a single response. I also told him of the abuse and he did not respond. The only reason I got help was because I was able to get a kyte to the Capitol in Salem and they did respond. I also believe Lt. Rowley and the other officers named in Claim 8 and 2 were involved.


# Claim X

My 1st amendment right to freedom from retaliation for pursuing my right to redress for wrongdoings done to me by a state actor has been violated by Officers Hawkins, N. Main and several others whose names will be gotten during discovery(SRCI), also Sgt. Kautz and Lt. Anderson.

**Supporting Facts:**
1. 02-07-2019 I was placed in DSU this evening (as per claim 9) and Officer Hawkins was working (he only worked DSU-B on Thursday night). Officer Hawkins is well known for being a violent and retaliatory officer (see also No. 2:15-cv-00102-MO). Because I was put in DSU out of retaliation for filing grievances and lawsuits against staff he was rude to me.
2. 02-14-2019 Officer Hawkins was working again and this evening he refused to feed me, instead gave my pizza to the orderly at the end of the tier. I told him I was going to file a lawsuit against him if he didn't feed me. I reminded him that I was not going to be in DSU forever and that he would have to face his actions in court. He just laughed and kept going.

**3.** 02-21-2019 By this time I had been violently retaliated against for the last 2 weeks. Among many other things they took my sheets, blankets, mattress, toothbrush, pen (so I couldn't write kytes and grievances against them), refused to feed me at times, and many other horrible things—this evening everything exploded. Once again I was refused food by Officer Hawkins and another officer whose name I do not recall, and I told them I want my food and reminded them that they will not get away with this. This started a big explosion. The second officer threatened to kill me (literally) and the entire tier exploded in cursing me and I was yelling (no profanities, ONLY threats of legal action) and it got ugly with lots of threats by officers. They did not feed me.

    **3.1.** After dinner an entourage of officers shows up at my room and handcuff me and take me down to the intake room and handcuff me naked to the wall and threaten me with their fists, tear up my legal paperwork in front of me, including documents from the inspector general specifically about the abuse I was receiving in DSU. Officer N. Main told me that if I complained again I was going to get hurt really badly. 5 or 6 guys were standing there staring at me naked, chained to this wall while they threatened me.

    **3.2.** After this horrific, degrading and humiliating abuse while chained, they let me off of the chain and put me into a big metal box right by a roll-up door leading outside. They shut all the inside doors (so they didn't get cold in other areas) and opened the outside door where it was below freezing just feet from my metal box and left me in there for about an hour. During this hour they kept coming to my box and further threatening me. They even printed my criminal charges off and were waving it in front of the window in this box telling me how I should kill myself. I can identify each officer who was there, I remember it like it happened yesterday.

    **3.3.** After about an hour Sgt. Kautz came and explained to me that they planted a bunch of contraband in my cell and took pictures of it and I'm going to get another misconduct report for having this contraband. He told me he had been doing this  for 17 years (I believe the number was 17, could have been 15) and had never lost a case and he can get away with whatever he wants. Lt. Anderson came to me shortly after this and threatened me more and let me know he will personally be taking care of any further disturbances by me. Disturbances meaning things like wanting to eat. I lost over 25lbs. During my 90 days in DSU. I was about 194 and went down to somewhere around 165-170lbs and I am 6' tall. I looked like a skeleton.

**3.4.**    When i was in the cold-box I told them I wanted an Inspector General call and they warned me against it. I told them I don't care, I want my call. As officer N. Main (the same one who threatened to hurt me badly if I complained again) and a second officer (the same one who was with Hawkins and refused to feed me and threatened my life) brought me to a room to make my call they said that if I said anything crazy they were going to "drop me", which I assume is not a pleasant experience. I went into the room where Sgt. Kautz was waiting to dial the phone. He once again reminded me that I had a choice to make and that he was basically untouchable. They then proceeded to intimidate me out of my call and I went back to my cell.

**3.5.**    Upon arriving at my cell I saw that they had taken pretty much everything from my cell (Sheets, pillow, toothbrush, cup and everything but a book) in retaliation for wanting food (vociferously, but politely and without cursing). What they had done is plant a bunch of "fishing poles" in my room. A prison fishing pole is a long rod made out of multiple pieces of paper used to fish contraband that other inmates push out from under their door. The recipient of the contraband tries to throw a string attached to the end of this fishing pole that has a "hook" on it (another piece of paper shaped to grab things) and he tries to scrape the contraband item back into his cell. These fishing poles themselves are contraband because they waste DOC resources by using paper for unofficial purposes, and because they are used to pass contraband, like medications and whatever they can get from somewhere. I am in prison on a sexual offense and every other person in that entire DSU unit was a gang member type who wouldn't talk to me let alone pass me some of their contraband. I've never made a fishing pole, I would never make a fishing pole. I have no reason to have a pole as I have no one to fish with. What the officers did is collect poles from the other inmates on the tier (because they don't care if they fish, they do it all day and no one says anything), letting them know they were putting the poles in my room to give me a DR, and they put somewhere around 20 poles in my room. That is at least 60+ pieces of paper minimum. I was on a paper ban, with no paper allowed in my cell. They had put me on a paper ban because I was writing kytes and grievances about their abuse. They not only took all my paper, but they also took my pen. I had to write a note pleading for help with grape drink mix and a single law library kyte that I was able to hide from them until a day that the abusers were not working. But their claim on this fishing-pole DR was that, during a paper ban where I was getting no paper, I was able to

procure somewhere around 60-70 pieces of paper and create massive numbers of fishing poles (when you only need one) to fish on a tier where there is no one to fish with. It's more than mildly absurd. I have 2 of the gang member types that were present who will testify as to what happened.

I assert that this abuse and planting of contraband in my room amounted to retaliation and an eighth amendment violation of cruel and unusual punishment for being chained naked to a wall, humiliated, threatened, put in a cold-box and having my legal paperwork torn up. The above named defendants (and about 8+ that I do not know their names) participated in this horrific event.

## Claim XI

My 8th amendment right to freedom from Cruel and Unusual Punishment was violated by Officers Hawkins, N. Main and several others whose names will be gotten during discovery(SRCI), also Sgt. Kautz and Lt. Anderson.

**Supporting Facts:**

1. As per the details outlined in claim 10, I assert that the above mentioned state actors did violate the 8th amendment by chaining me naked to a wall and abusing me (see claim 10, section 3), putting me in a cold box with very little clothing, threatening me out of my Inspector General phone call, taking my health care supplies (toothbrush, toothpaste), forcing me to wear the same clothes for weeks at a time because they signed me up for 6XL sized clothing and wouldn't change it and intentionally deciding not to feed me. Also during this time they would yell out to the entire tier of gang members various fake charges, like I was in for raping a 2yr old boy, which is false. They were trying to get me assaulted. They also intimidated me out of writing grievances and kytes by saying they were going to hurt me very badly if I complained about them (Officer N. Main did this). I assert that none of these actions served a legitimate penological purpose. I sent many, many kytes (before they took my paper and pen) asking for video to be preserved. I sent them to the superintendent and he never responded and kept the kytes. I sent some to James Taylor (Grievance coordinator) and he said it wasn't his job. Many of my papers were taken and thrown away by staff in DSU.

## Claim XII

My 8th amendment right to freedom from Cruel and Unusual Punishment was violated by Captain Woodland, Officer N. Main, Lt. King, 2nd shift Lt. on complex 2 on 04-05-19, 3rd shift Sgt. on complex 2 on 04-04-19 and 2 officers working DSU intake area on 04-04-19 at about 1pm.

**Supporting facts:**

1. 04-04-2019 I was in DSU being abused for 56 days (then another 34 after this incident) when my name was finally cleared from the incident in Claim 9 where Officer Jantzen planted a knife in my room. Even though I was honor unit qualified (NCI level 3) they released me to an active gang member unit so I could and would be attacked right away.

    1.1.  When I was being released I heard what unit I was going to and I informed the 2 officers who were letting me go (whose names I will ask for in discovery) that I would not be safe on this gang member unit. They did nothing for me and would not go to the Sgt. who works on DSU releases to get it changed.

    1.2.  I dragged all my belongings to complex 2 but before even going to the unit I stopped at the complex Sgt.'s office to tell him I would not be safe in that unit. He listened to me and told me to go there and see if any problems happen and to tell him that evening. So that evening at chow I told him my cellmate and I were already getting physical and extortion threats. This same Sgt. said he would not move me but that I should just stand up to them and fight the gangs, single-handedly, because someone needed to do it. His solution was for a single S.O. To stand up and fight against the multiple violent gangs housed in the unit, clearly not a legal or viable solution.

    1.3.  Because the Sgt. refused to help me I spoke to the Lt. who was outside the chow hall also and told him and Officer Main(the same Officer Main who threatened to hurt me very badly if I complained again in Claim 10) about the threats and asked them to move me before I got assaulted or killed. They both refused. Officer N. Main laughed and said, "See ya back in DSU!". So I was forced to go back to a hostile unit.

2. 04-05-2019 At breakfast this day I spoke with Captain Woodland, who was standing outside of the chow hall and I told him of the threats. He shrugged, smiled and said, "You're general population and it's a G.P. Unit." The big joke to him was that he knew it was pretty much all gang members in there and that I was an S.O. and not compatible, but it was still general population, not segregation. He ignored my pleas for help and refused to move me even with active threats and extortion being directed towards me and my cellmate.

**2.1.**    As I was speaking to the Captain, the complex Lt. came up and listened. At the end, after the captain made his big joke about it being G.P., the lieutenant, instead of helping me, scolded me for speaking to the captain and not going to him, although he was not there when I came out of the chow hall. He also refused to help me not get attacked.

**3.** 04-05-2019 A few hours after speaking with Captain Woodland and the Lt. I was brutally attacked on the unit and had my Orbital fractured, teeth pushed through my lip and a bunch of other facial damage that left scarring. My bottom lip is 50% numb, I lost a portion of my lip inside and I don't hold fluids in my mouth as well as I used to be able to do.

**4.** After this I was placed in DSU and abused for another 34 days.

They knew of a threat and chose to do nothing. I believe they put me there on purpose. I had been at SRCI for about 4 years at the time and when they put me in a non-violent unit I have no problems. The 2 times they put me on a gang member unit I have been assaulted right away (see 2:16-cv-00532TC for the other incident). They definitely knew I was going to get assaulted and did nothing, and in fact made jokes about it and told me to fight back. This is not legal. Farmer V. Brennan is very clear about this subject.

# Claim XIII

My Eighth Amendment rights are being and have been violated by various state actors such as Kate Brown, Colette Peters, Heidi Steward, Mike Gower, Mark Nooth in the area of inadequate social distancing in relation to Covid-19. All of the following events happened at TRCI and SRCI was not involved in any way.

**1.**    I understand that the Federal Court cannot enjoin Oregon to release an inmate or open and occupy a  particular prison to lower populations in currently running prisons in a §1983 claim, that is why I am filing for money. Perhaps if they lose enough money they will act to social distance. I would rather enjoin them to separate, but I do not have that option here.

I was celled-up with a guy who has had Covid twice, once while I was in the cell for the duration of his infection. I wrote a grievance asking to be moved to a single cell and protected, but they did not accept the grievance and ignored my concerns.

Then, on September 10th to September 19th they turned all air circulation off in every unit in TRCI because of smoke outside (they left air on in the outer hallways and in staff areas, of course, just not in the units). The temperatures rose to easily near 100° farenheit and

insane humidity (obviously I have no tools to measure humidity). My books were warping from water damage caused by the humidity and it was almost impossible to sleep. During this they refused to put fans in to at least move the air around. They refused to allow us to keep our tray ports open or even go outside. About the middle of this time they put 2 new people in our unit but they were on Quarantine. People with Covid (or possible Covid) and completely non-moving, stale air is not safe. They have pretended to take precautions, but they really are not. We do not have access to gloves, bacterial soap (we just get the cheapest possible sandpaper-type soap), social distancing and being locked down 19-22 hours a day in a cell(alternating every other day, 19 hours one day, 22 hours the next day; creating 44 hours in a row where we get out only 3.5 hours).

    I am 50 years old and have had bronchitis, pneumonia (a few times), countless cold viruses, whooping cough and flus. I have been "obese" most of my adult life (about 220-250lbs at 6' tall) but am currently at about 195lbs at 6' tall. I was stuck in a cell with a guy who had an active case of Corona-virus and I told staff, who did nothing. I also wrote a grievance(which takes about 30 days to even get an acknowledgment that they received it, then another 35 for them to respond, which is a useless system for actually fixing any problems, but is the only thing available, even in life threatening situations like what I was in) which, like I said above, was denied—they didn't even look at it.

    When I told the unit officer I needed to move because my cellmate has Covid he said there was nothing he could do about it, which is exactly what he did, nothing. He told me I could refuse to cell-in, which would have put me in DSU, dropped me incentive levels (I am honors unit qualified at top incentive level), gotten me a monetary fine and put a major misconduct on my record for refusing to cell-in. In addition to that TRCI has a regular pattern of putting non-violent prisoners (non-gang members, S.O.'s, elderly and the like) in gang-member units to get assaulted. If you refuse to go to the unit they again fine you and remove another incentive level and put you in DSU again. This could go on for months until they finally, randomly place you in one of the 2 non-gang-member units. So my choice was to stay in the non-gang-member unit I was in and risk getting Covid or get sent to DSU and very likely get put on a carousel of either being assaulted and extorted or being punished by staff for not wanting to get assaulted and extorted. This choice alone is a violation of the 8th amendment. I should not have to choose between a sanction or physical safety.

I assert that keeping inmates in stale, non-moving air during a pandemic involving a disease that is more easily transmitted in such environmental conditions and then placing two new people who are on quarantine in the unit with no air circulation and intense heat is a violation of the eighth amendments condition of confinement clause. It placed me in an inescapable quandry. I had to choose between a severe sanction of being placed in DSU and the many losses associated with it (as listed above) or being stuck in an oppressively hot and dangerous unit during a pandemic with no air circulation. It is worth noting that conditions in DSU would be no better since the air was off there also. MULTIPLE times I requested that they place fans in the unit to at least move the air some, but they refused to do anything to alleviate the extreme temperatures and lack of oxygenated air.

**I would like to request specifically a jury trial.**

## IV. RELIEF

I am looking for appropriate monetary remuneration and punitive damages for each claim stated individually. And on Claim 13 I am looking at being housed at a facility with appropriate housing to manage active COVID cases if they were to occur.

Signed this the 5ᵗʰ day of August , 20 21 .

Brian Jeremiah   *Pro Se*
SID# 11464377
Two Rivers Correctional Institution
82911 Beach Access rd
Umatilla, Oregon  97882

## CERTIFICATE OF SERVICE

**CASE NAME:** _Jeremiah_ v. _Cain_

**CASE NUMBER:** (if known) _2:21-cv-00618 MK_

COMES NOW, _Brian Jeremiah_ , and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at <u>Two Rivers Correctional Institution (TRCI)</u>.

That on the _5th_ day of _August_ , 20 _21_ , I personally gave Two Rivers Correctional Institution's e-filing service A TRUE COPY of the following:

_First Amended Initial Complaint_

(Signature)

Print Name _Brian Jeremiah_

S.I.D. No.: _11464377_